Carol N. Lambos            Donato Caruso
James R. Campbell         William M. Spelman
THE LAMBOS FIRM, LLP    THE LAMBOS FIRM, LLP
599 Avenue C              303 South Broadway, Suite 410
Bayonne, NJ 07002         Tarrytown, New York 10591
Tel: (201) 823-1000        Tel. (212) 943-2470
*Attorneys for Plaintiffs*      *Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---------------------------------------------------------------------------------- x

NEW YORK SHIPPING ASSOCIATION, INC.; AMERICAN PRESIDENT      :
LINES, LTD.; A.P. MOELLER - MAERSK A/S; ATLANTIC      :
CONTAINER LINE A.B.; CARGOTEC USA INC.; CERES ATLANTIC      :
TERMINALS INC.; CMA CGM S.A.; COSCO CONTAINER LINES      :
CO. LTD.; EVERGREEN LINE JOINT SERVICE AGREEMENT;      :
GLOBAL TERMINAL & CONTAINER SERVICES, LLC; HAMBURG      :     **Document Filed**
SÜDAMERI KANISCHE DAMPFSCHIFFFAHRTS GESELLSCHAFT      :     **Electronically**
KG; HANJIN SHIPPING CO., LTD.; HAPAG-LLOYD AG; HORIZON      :
LINES, LLC; KAWASAKI KISEN KAISHA, LTD.; MAHER      :     **COMPLAINT**
TERMINALS LLC; MEDITERRANEAN SHIPPING COMPANY S.A.;      :
MITSUI O.S.K. LINES, LTD.; NEW YORK CONTAINER TERMINAL,      :
INC.; NYK LINE (NORTH AMERICA) INC. as agent for NIPPON      :
YUSEN
KABUSHIKI KAISHA; ORIENT OVERSEAS CONTAINER LINE      :
LIMITED; PORTS AMERICA, INC.; TURKON LINE; UNITED ARAB      :    Civil Action No.:
SHIPPING COMPANY (S.A.G.); UNIVERSAL MARITIME SERVICE      :
CORP.; YANG MING MARINE TRANSPORT CORP.; and      :
ZIM INTEGRATED SHIPPING SERVICES CO., LTD.;      :
                       Plaintiffs,      :
     :
            - v. -      :
     :
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO;      :
LOCAL 1, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,      :
AFL-CIO; LOCAL 920, INTERNATIONAL LONGSHOREMEN'S      :
ASSOCIATION, AFL-CIO; LOCAL 1233, INTERNATIONAL      :
LONGSHOREMEN'S ASSOCIATION, AFL-CIO; LOCAL 1235,      :
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO;      :
LOCAL 1242, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION,      :
AFL-CIO; LOCAL 1291, INTERNATIONAL LONGSHOREMEN'S      :
ASSOCIATION, AFL-CIO; LOCAL 1566, INTERNATIONAL      :
LONGSHOREMEN'S ASSOCIATION, AFL-CIO; LOCAL 1588,      :
INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL-CIO;      :
LOCAL 1804-1, INTERNATIONAL LONGSHOREMEN'S      :
ASSOCIATION, AFL-CIO; and LOCAL 1814, INTERNATIONAL      :
LONGSHOREMEN'S ASSOCIATION, AFL-CIO;      :
                      Defendants.      :
---------------------------------------------------------------------------------- x

A0008057

Plaintiffs, by and through their undersigned attorneys, The Lambos Firm, LLP, as and for their complaint, respectfully allege as follows:

## JURISDICTION AND VENUE

1.      This is an action pursuant to section 303 of the Labor Management Relations Act (LMRA), 29 U.S.C.A. § 187 (West 1998), seeking damages for injuries suffered as the result of an unfair labor practice in violation of 29 U.S.C.A. § 158(b)(4) (West 1998).

2.      This court has subject-matter jurisdiction to entertain this proceeding pursuant to LMRA § 303(b), 29 U.S.C.A. § 187(b) (West 1998), and 28 U.S.C.A. §§ 1331, 1337 (West 2006).

3.      Venue in the District of New Jersey is proper under 28 U.S.C.A. § 1391 (West 2006) and 29 U.S.C.A §§ 185, 187 (West 1998) because (a) defendants are found, do, or transact business in the District of New Jersey, (b) the respective duly authorized officers and agents of defendants are engaged in representing and acting for their members in the District of New Jersey; and (c) a substantial part of the events or omissions giving rise to the claims occurred in the District of New Jersey.

## NON-PARTY

4.      United States Maritime Alliance, Ltd. (USMX) is a non-profit membership corporation organized and existing under and by virtue of the laws of the State of Delaware with its principal office located at 485C U.S. Highway 1 South, Iselin, New Jersey 08830. USMX is a multiemployer collective-bargaining representative for its members, which consist of shipping companies or lines (also known as carriers), marine terminal operators and stevedoring companies, and port associations that represent employers of longshore labor engaged in container and roll on/roll off (ro/ro) operations in ports on the East and Gulf Coasts of the United States, including the

A0008057                                    -2-

Port of New York and New Jersey (NY-NJ Port).  USMX on behalf of its members negotiates and administers with Defendant International Longshoremen's Association, AFL-CIO (ILA) on behalf of its constituent locals, including each of the locals that is a defendant in this action, a collective bargaining agreement, known as the Master Contract, which prescribes the key terms and conditions of employment for longshore workers employed in container and ro/ro operations in ports on the East and Gulf Coasts of the United States, including the  NY-NJ Port.

## PARTIES

5.      Plaintiff New York Shipping Association, Inc. (NYSA) is a not-for-profit membership corporation organized and existing under and by virtue of the laws of the State of New York with its principal office located at 333 Thornall Street, Suite 3A, Edison, New Jersey 08837. NYSA is authorized to carry on its corporate activities in the State of New Jersey. NYSA is a multiemployer collective-bargaining representative for its members, which consist of carriers, marine terminal operators, stevedoring companies, and other employers of longshore labor engaged in maritime operations in the NY-NJ Port.  NYSA on behalf of its members negotiates, enters into, and administers with the ILA on behalf of its constituent locals in the NY-NJ Port a collective bargaining agreement that prescribes the terms and conditions of employment for longshore workers in the NY-NJ Port (hereinafter referred to as "NYSA-ILA CBA").  NYSA is a port-association member of USMX, and NYSA and its members are bound to the Master Contract.

**Carrier Plaintiffs**

6.      Plaintiff American President Lines, Ltd. (APL) is a company organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business at 16220 N. Scottsdale Road, Suite 300, Scottsdale, Arizona 85254.  APL is engaged in the business of

transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  APL is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

7.     Plaintiff A.P. Moeller - Maersk A/S (Maersk) is a company organized and existing under and by virtue of the laws of Denmark.  Maersk is represented in the United States by Maersk Agency USA, Inc., which is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has its principal place of business at 2 Giralda Farms, Madison, New Jersey 07940.  Maersk is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  Maersk is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

8.     Plaintiff Atlantic Container Line A.B. (ACL) is a company organized and existing under and by virtue of the laws of Italy with a principal place of business in the United States at 50 Cardinal Drive, Westfield, New Jersey 07090.  ACL is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  ACL is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

9.     Plaintiff CMA CGM S.A. (CMA CGM) is a company organized and existing under and by virtue of the laws of France.  CMA CGM is represented in the United States by CMA CGM (America) LLC, which is a corporation organized and existing under and by virtue of the laws of the State of New Jersey and has its principal place of business at 5701 Lake Wright Drive, Norfolk, Virginia 23502.  CMA CGM is engaged in the business of transporting cargo by sea in international

trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  CMA CGM is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

10.      Plaintiff Cosco Container Lines Co. Ltd. (Cosco) is a company organized and existing under and by virtue of the laws of China.  Cosco is represented in the United States by Cosco Container Lines Americas, Inc., which is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has its principal place of business at 100 Lighting Way, Secaucus, New Jersey 07094.  Cosco is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  Cosco is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

11.      Plaintiff Evergreen Line Joint Service Agreement (Evergreen) is a joint venture of Evergreen Marine Corp. (Taiwan) Ltd., Evergreen Marine (UK) Limited, Italia Marittima SpA, Evergreen Marine (Hong Kong) Ltd., and Evergreen Marine (Singapore) Pte. Ltd., carriers engaged in the business of transporting cargo by sea in international trade and commerce.  Evergreen is represented in the United States by Evergreen Shipping Agency (America) Corp., which is a corporation organized and existing under and by virtue of the laws of the State of New Jersey and has its principal place of business at 1 Evertrust Plaza, Jersey City, New Jersey 07302.  Evergreen's ships call at ports in the United States, including the NY-NJ Port.  Evergreen is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

12.     Plaintiff Hamburg Südamerikanische Dampfschifffahrtsgesellschaft KG (Hamburg Süd) is a company organized and existing under and by virtue of the laws of Germany.  Hamburg Süd is represented in the United States by Hamburg Süd North America, Inc.,which is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has its principal place of business at 465 South Street, Morristown, New Jersey 07960.  Hamburg Süd is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  Hamburg Süd is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

13.     Plaintiff Hanjin Shipping Co., Ltd. (Hanjin) is a company organized and existing under and by virtue of the laws of the Republic of Korea.  Hanjin has an office in the United States at 80 East Route 4, Suite 490, Paramus, New Jersey 07652.  Hanjin is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  Hanjin is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

14.     Plaintiff Hapag-Lloyd AG (Hapag-LLoyd) is a company organized and existing under and by virtue of the laws of Germany.  Hapag-LLoyd is represented in the United States by Hapag-Lloyd (America) Inc., which is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has its principal place of business at 399 Hoes Lane, Piscataway, New Jersey 08854.  Hapag-Lloyd is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  Hapag-

Lloyd is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

15.     Plaintiff Horizon Lines, LLC (Horizon) is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business at 4064 Colony Road, Suite 200, Charlotte, North Carolina 20211.  Horizon is engaged in the business of transporting cargo by sea in interstate and foreign commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  Horizon is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

16.     Plaintiff Kawasaki Kisen Kaisha, Ltd. ("K" Line) is a company organized and existing under and by virtue of the laws of Japan.  "K" Line is represented in the United States by "K" Line America, Inc., which is a corporation organized and existing under and by virtue of the laws of the State of Michigan and which has its principal place of business at 890 Mountain Avenue, Murray Hill, New Jersey 07974.  "K" Line is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  "K" Line is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

17.     Plaintiff Mediterranean Shipping Company S.A. (MSC) is a company organized and existing under and by virtue of the laws of Switzerland.   MSC is represented in the United States by MSC USA Inc., which is a corporation organized and existing under and by virtue of the laws of the State of New York and has its principal place of business at 420 Fifth Avenue, 8th Floor, New York, New York 10018.  MSC is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ

Port.  MSC is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

18.     Plaintiff Mitsui O.S.K. Lines, Ltd. (MOL) is a company organized and existing under and by virtue of the laws of Japan.  MOL is represented in the United States by MOL (America) Inc.,  which is a corporation organized and existing under and by virtue of the laws of the State of Delaware and has its principal place of business at 700 E. Butterfield Rd, Suite 250, Lombard, Illinois 60148.  MOL is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  MOL is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

19.     Plaintiff Nippon Yusen Kabushiki Kaisha (NYK Line) is a company organized and existing under and by virtue of the laws of Japan.  NYK Line is represented in the United States by NYK Line (North America) Inc., which is a corporation organized and existing under and by virtue of the laws of the State of Delaware and which has its principal place of business at 300 Lighting Way, 5th Floor, Secaucus, New Jersey 07094.  NYK Line is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  NYK Line is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

20.     Plaintiff Orient Overseas Container Line Limited (OOCL) is a company organized and existing under and by virtue of the laws of Hong Kong.  OOCL is represented in the United States by OOCL (USA) Inc., which is a corporation organized and existing under and by virtue of the laws of the State of New York and has its principal place of business at 2633 Camino Ramon,

San Ramon, California 94563.  OOCL is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  OOCL is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

21.     Plaintiff Turkon Line (Turkon) is a company organized and existing under and by virtue of the laws of Turkey.  Turkon is represented in the United States by Turkon America Inc., which is a corporation organized and existing under and by virtue of the laws of the State of New Jersey and has its principal place of business at 100 Plaza Drive, Secaucus, New Jersey 07094. Turkon is engaged in the business of transporting cargo by sea in international trade and commerce. Its ships call at ports in the United States, including the NY-NJ Port.  Turkon is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

22.     Plaintiff United Arab Shipping Company (S.A.G.) (UASC) is a company organized and existing under and by virtue of the laws of Kuwait.  UASC has an office in the United States at 511 South Avenue, Cranford, New Jersey 07016.  UASC is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  UASC is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

23.     Plaintiff Yang Ming Marine Transport Corp. (Yang Ming) is a company organized and existing under and by virtue of the laws of Taiwan.  Yang Ming is represented in the United States by Yang Ming (America) Corp., which is a corporation organized and existing under and by virtue of the laws of the State of New York and has its principal place of business at 525 Washington

Blvd., 25th Floor, Jersey City, New Jersey 07310.  Yang Ming is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  Yang Ming is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

24.     Plaintiff ZIM Integrated Shipping Services Co., Ltd. (ZIM) is a company organized and existing under and by virtue of the laws of Israel.  ZIM is represented in the United States by ZIM American Integrated Shipping Services Co., Inc., which is a corporation organized and existing under and by virtue of the laws of the State of New York and has its principal place of business at 5801 Lake Wright Drive, Norfolk, Virginia 23502.  ZIM is engaged in the business of transporting cargo by sea in international trade and commerce.  Its ships call at ports in the United States, including the NY-NJ Port.  ZIM is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

25.     The plaintiffs identified in paragraphs 6 through 24 are collectively referred to in this complaint as the "Carrier Plaintiffs."

**MTO/Stevedore Plaintiffs**

26.     Plaintiff Ceres Atlantic Terminals Inc. (Ceres), a business corporation organized and existing under and by virtue of the laws of the State of Delaware, is a stevedore in the NY-NJ Port. Its principal place of business is at 51 Port Terminal Blvd., Bayonne, New Jersey 07002.  Ceres is engaged in the business of stevedoring cruise ships in the NY-NJ Port.  Ceres is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

A0008057                                        -10-

27.     Plaintiff Global Terminal & Container Services, LLC (Global), a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, is a marine terminal operator (MTO) in the NY-NJ Port.  Its principal place of business is at 302 Port Jersey Boulevard, Jersey City, New Jersey 07305.  Global is engaged in the business of operating a marine terminal and stevedoring cargo ships in the NY-NJ Port.  Global is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

28.     Plaintiff Maher Terminals LLC (Maher), a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, is an MTO in the NY-NJ Port.  Its principal place of business is at 1210 Corbin Street, Elizabeth, New Jersey 07201.  Maher is engaged in the business of operating a marine terminal and stevedoring cargo ships in the NY-NJ Port. Maher is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

29.     Plaintiff New York Container Terminal, Inc. (NYCT), a business corporation organized and existing under and by virtue of the laws of the State of New York, is an MTO in the NY-NJ Port.  Its principal place of business is at 300 Western Avenue, Staten Island, New York 10303.  NYCT is engaged in the business of operating a marine terminal and stevedoring cargo ships in the NY-NJ Port. NYCT is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

30.     Plaintiff Ports America, Inc. (Ports America), a business corporation organized and existing under and by virtue of the laws of the State of Delaware, is an MTO in the NY-NJ Port.  Its principal office is at 99 Wood Avenue South, Iselin, New Jersey 08830.  Ports America is engaged

in the business of operating a marine terminal and stevedoring cargo ships in the NY-NJ Port. Ports America is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA. Ports America has three facilities in the NY-NJ Port: Port Newark Container Terminal, Port Newark Auto Terminal, and Bayonne Auto Terminal.

31.     Plaintiff Universal Maritime Service Corp. (Universal), a business corporation organized and existing under and by virtue of the laws of the State of New York, is an MTO in the NY-NJ Port.  Its principal office is at 5080 McLester Street, Elizabeth, New Jersey 07207. Universal is engaged in the business of operating a marine terminal and stevedoring cargo ships in the NY-NJ Port. Universal is a member of both NYSA and USMX and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

32.     The plaintiffs identified in paragraphs 26 through 31 are collectively referred to in this complaint as the "MTO/Stevedore Plaintiffs."

33.     Plaintiff Cargotec USA Inc. (Cargotec), a company organized and existing under and by virtue of the laws of the State of Delaware, is a crane maintenance repair company operating in the NY-NJ Port.  Its principal place of business is at 415 E. Dundee Street, Ottawa, Kansas 66067. Cargotec is a member of NYSA and is bound by the collective bargaining agreements negotiated by NYSA and USMX with the ILA.

34.     Defendant International Longshoremen's Association, AFL-CIO (ILA) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 17 Battery Place, New York, New York 10004.  The ILA represents longshore workers in ports on the Atlantic and Gulf Coasts, including longshore workers employed by NYSA's members in the NY-NJ Port.

The ILA on behalf of its constituent locals, including the ILA locals named as defendants in this complaint, negotiates and administers the Master Contract with USMX and the NYSA-ILA CBA with NYSA.  The ILA is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

**NY-NJ ILA Locals**

35.    Defendant Local 1, International Longshoremen's Association, AFL-CIO (ILA Local 1) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 235 Clifford Street, Newark, New Jersey 07105.  ILA Local 1 represents the craft of longshore workers known as clerks and checkers who are employed by NYSA's members throughout the NY-NJ Port and are responsible for locating and tallying cargo.  ILA Local 1is a party to collective bargaining agreements with NYSA and USMX, and ILA Local 1 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

36.    Defendant Local 920, International Longshoremen's Association, AFL-CIO (ILA Local 920) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 2015 Forest Avenue, Staten Island, New York 10303.  ILA Local 920 represents the craft of longshore workers known as longshoremen who are employed in Staten Island, New York, which is within the NY-NJ Port, and who are responsible for loading and unloading cargo on to and off of cargo ships.  ILA Local 920 is a party to collective bargaining agreements with NYSA and USMX, and ILA Local 920 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

37.    Defendant Local 1233, International Longshoremen's Association, AFL-CIO (ILA Local 1233) is an unincorporated association, *i.e.*, a labor organization, with its principal office

located at 731 South 10th Street, Newark, New Jersey 07108.  ILA Local 1233 represents the craft

of longshore workers known as longshoremen who are employed by NYSA's members in Newark

and Elizabeth, New Jersey, which is within the NY-NJ Port, and who are responsible for loading and

unloading cargo on to and off of cargo ships.  ILA Local 1233 is a party to collective bargaining

agreements with NYSA and USMX, and ILA Local 1233 is a labor organization within the meaning

of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

     38.     Defendant Local 1235, International Longshoremen's Association, AFL-CIO (ILA

Local 1235) is an unincorporated association, *i.e.*, a labor organization, with its principal office

located at 30 Hennessey Street, Newark, New Jersey 07105.  ILA Local 1235 represents the craft

of longshore workers known as longshoremen who are employed by NYSA's members in Newark

and Elizabeth, New Jersey, which is within the NY-NJ Port, and who are responsible for loading and

unloading cargo on to and off of cargo ships.  ILA Local 1235 is a party to collective bargaining

agreements with NYSA and USMX, and ILA Local 1235 is a labor organization within the meaning

of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

     39.     Defendant Local 1588, International Longshoremen's Association, AFL-CIO (ILA

Local 1588) is an unincorporated association, *i.e.*, a labor organization, with its principal office

located at 550 Kennedy Boulevard, Bayonne, New Jersey 07002.  ILA Local 1588 represents the

craft of longshore workers known as longshoremen who are employed by NYSA's members in

Bayonne, New Jersey, which is within the NY-NJ Port, and who are responsible for loading and

unloading cargo on to and off of cargo ships and loading and unloading baggage on to and off of

cruise ships. ILA Local 1588 is a party to collective bargaining agreements with NYSA and USMX,

and ILA Local 1588 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

40.     Defendant Local 1804-1, International Longshoremen's Association, AFL-CIO (ILA Local 1804-1) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 5000 West Side Avenue, North Bergen, New Jersey 07047.  ILA Local 1804-1 represents the craft of longshore workers known as maintenance and repair (M&R) workers who are employed by NYSA's members on the New Jersey side of the NY-NJ Port and are responsible for the maintenance and repair of cargo-handling equipment.  ILA Local 1804-1 is a party to collective bargaining agreements with NYSA and USMX, and ILA Local 1804-1 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

41.     Defendant Local 1814, International Longshoremen's Association, AFL-CIO (ILA Local 1814) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 70 20th Street, Brooklyn, New York 11232.  ILA Local 1814 represents two crafts of longshore workers, longshoremen and M&R workers who are employed by NYSA's members on the New York side of the NY-NJ Port.  Local 1814's members who are longshoremen are responsible for the loading and unloading of cargo on to and off of cargo ships and baggage on to and off of cruise ships.  Local 1814's members who are M&R workers are responsible for the maintenance and repair of cargo-handling equipment.  ILA Local 1814 is a party to collective bargaining agreements with NYSA and USMX, and ILA Local 1814 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

42.     The defendants identified in paragraphs 35 through 41 are collectively referred to in this complaint as the "NY-NJ ILA Locals."

**Philadelphia ILA Locals**

43.     Defendant Local 1242, International Longshoremen's Association, AFL-CIO (ILA Local 1242) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 236 East Richmond Street, Philadelphia, Pennsylvania 19125.  ILA Local 1242 represents the craft of longshore workers known as clerks and checkers who are employed in the Port of Philadelphia, which includes ports along the Delaware River in New Jersey and in Pennsylvania, and who are responsible for the locating and tallying of cargo.  ILA Local 1242 is a party to collective bargaining agreements with USMX, and ILA Local 1242 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

44.     Defendant Local 1291, International Longshoremen's Association, AFL-CIO (ILA Local 1291) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 3460 North Delaware Avenue, Suite 101, Philadelphia, Pennsylvania 19134.  ILA Local 1291 represents the craft of longshore workers known as longshoremen who are employed in the Port of Philadelphia, which includes ports along the Delaware River in New Jersey and in Pennsylvania, and who are responsible for loading and unloading cargo on to and off of cargo ships.  ILA Local 1291 is a party to collective bargaining agreements with USMX, and ILA Local 1291 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

45.     Defendant Local 1566, International Longshoremen's Association, AFL-CIO (ILA Local 1566) is an unincorporated association, *i.e.*, a labor organization, with its principal office located at 1341 North Delaware Avenue, Suite 302, Philadelphia, Pennsylvania 19125.  ILA Local 1566 represents the craft of longshore workers known as M&R workers who are employed in the

Port of Philadelphia, which includes ports along the Delaware River in New Jersey and in Pennsylvania, and who are responsible for the maintenance and repair of cargo-handling equipment. ILA Local 1566 is a party to collective bargaining agreements with USMX, and ILA Local 1566 is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C.A. § 152(5) (West 1998).

46.     The defendants identified in paragraphs 43 through 45 are collectively referred to in this complaint as the "Philadelphia ILA Locals."

## BACKGROUND FACTS

47.     Upon information and belief, members of the Holt family operate marine terminal facilities in the Port of Philadelphia, including the Packer Avenue Marine Terminal (PAMT) on the Pennsylvania bank of the Delaware River and the Gloucester Marine Terminal (GMT) on the New Jersey bank of the Delaware River.

48.     Upon information and belief, the Philadelphia ILA Locals represent workers employed at PAMT but do not represent workers employed at GMT.

49.     The Holt company that operates the terminal at PAMT is Greenwich Terminals LLC, which is a member of the Philadelphia Marine Trade Association Inc. (PMTA), a port association which, like NYSA, is also a member of USMX.  By virtue of its membership in the PMTA, Greenwich Terminals LLC is bound by the Master Contract negotiated by USMX with the ILA.

50.     Upon information and belief, during the spring of this year three carriers calling at the NY-NJ Port considered relocating to PAMT in the Port of Philadelphia.  Upon information and belief, certain Philadelphia ILA Locals objected because Greenwich Terminals LLC does not employ union labor that is represented by the ILA exclusively, since maintenance workers at PAMT

are represented not by the ILA but by the International Association of Machinists.  In addition, upon information and belief, the employees at the automobile processing plant adjacent to PAMT are represented by the International Brotherhood of Teamsters.  Those objections were joined by the objections of NY-NJ ILA Locals that did not want Greenwich Terminals LLC to get that work from the NY-NJ Port.

51.     Upon information and belief, the Philadelphia ILA Locals in or about the spring of 2010 requested that carrier-members of USMX write letters to the Governor of the Commonwealth of Pennsylvania, requesting the Governor to cease giving preferential treatment to the facilities owned by members of the Holt family on the grounds that it was creating labor dissension within the Port of Philadelphia and, if the Governor refuses to do so, threatening to discontinue their calls to the Port of Philadelphia.

52.     Upon information and belief, the Philadelphia ILA Locals in or about the spring of 2010 requested that carriers cease calling at PAMT because the Philadelphia ILA Locals assert that the Holt family uses Greenwich Terminals LLC to subsidize operations at GMT to take business away from facilities in the Port of Philadelphia at which ILA-represented longshore workers are employed.

53.     In May 2010, the ILA and the NY-NJ ILA Locals requested a special meeting of the NYSA-ILA Contract Board, which is the joint labor-management body responsible for the administration of the NYSA-ILA CBA, to permit James H. Paylor, Jr., an International Vice President of Defendant ILA from the Port of Philadelphia and the president of Defendant ILA Local 1566, to make a PowerPoint presentation.  During that presentation Mr. Paylor sought the assistance

A0008057                                             -18-

of NYSA and its carrier-members to dissuade carriers from calling at PAMT and other facilities in the Port of Philadelphia where employees are not represented by the ILA exclusively.

54.     Upon information and belief, for many years vessels operated by Del Monte Fresh Produce Co. (Del Monte) had called at a marine terminal facility in the Port of Philadelphia located in Camden, New Jersey, at which members of the Philadelphia ILA Locals were employed.  Del Monte is not a member of Plaintiff NYSA or USMX, and it is not a party to a collective bargaining agreement with Defendant ILA or any of Defendant ILA's affiliated locals.

55.     Upon information and belief, in or about August of 2010 Del Monte entered into a new agreement with GMT, which resulted in a loss of employment for numerous members of the Philadelphia ILA Locals.

56.     Upon information and belief, in or about early to mid September 2010, officers, agents, and employees of the ILA, the NY-NJ ILA Locals, and the Philadelphia ILA Locals met in New Jersey and Maryland to address the Philadelphia ILA Locals' dispute with the companies owned by members of the Holt family.  Upon information and belief, at these meetings officers, agents, and employees of the ILA, the NY-NJ ILA Locals, and the Philadelphia ILA Locals agreed and conspired to devise and carry out a plan to direct, assist, and finance picketing by members of the Philadelphia ILA Locals at marine terminals in the NY-NJ Port and to instruct members of the NY-NJ ILA Locals to engage in a work stoppage in the NY-NJ Port by honoring the Philadelphia members' picket lines.  Upon information and belief, the purpose of this plan was to embroil in the dispute between the Philadelphia ILA Locals and the companies owned by members of the Holt family the members of NYSA, including carrier-members of NYSA whose ships call at the Holt family's PAMT facility operated by Greenwich Terminals LLC, and thus encourage those NYSA

members to cease doing business with Greenwich Terminals LLC or otherwise to pressure and compel Greenwich Terminals LLC and the Holt family to discontinue their purported practice of subsidizing GMT to take business away from facilities in the Port of Philadelphia at which ILA-represented longshore workers are employed or to force or require Greenwich Terminals LLC and Gloucester Terminals LLC to recognize or bargain with the Philadelphia ILA Locals exclusively as the representative of all their employees.

57.     Approximately 3,600 members of the ILA and its affiliated locals are employed by members of NYSA in the NY-NJ Port in the loading and unloading of cargo ships and ancillary work. The continuous service of these employees is essential to the ability of NYSA's members to provide adequate service to their customers, to maintain the NY-NJ Port as a viable transportation gateway, and to service the needs of the general public.

58.     The NYSA-ILA CBA currently in full force and effect prescribes wages, hours, and other terms and conditions of employment for the various crafts of longshore employees.  The agreement contains a comprehensive provision for the submission and settlement of all disputes under the labor contract through the contract's grievance and dispute resolution process, culminating in the arbitration of disputes not resolved through the grievance procedure, and states that all parties to the agreement agree to abide by the outcome of this procedure.

59.     Article XXIV of the NYSA-ILA CBA provides that during its term "there shall be no strikes or work stoppages by the employees."  That article also provides that the right of ILA members not to cross a bona fide picket line is recognized by the employers.

60.      On Friday, September 24, 2010, there were reliable reports that members of the NY-NJ ILA Locals would refuse to cross picket lines established by ILA members of the Philadelphia

ILA Locals to protest the use by certain carrier-members of NYSA of the PAMT facility operated by Greenwich Terminals LLC.  Those carrier-members of NYSA are Plaintiffs CMA CGM, Hamburg Süd, MSC, and Maersk.

61.   On September 24, 2010, NYSA on behalf of its members invoked the grievance and dispute-resolution process of the NYSA-ILA CBA.  Joseph Curto, President of Plaintiff NYSA and the Management Cochairman of the NYSA-ILA Contract Board, submitted to Harold J. Daggett, Executive Vice President of Defendant ILA, President of Defendant Local 1804-1, and Union Cochairman of the NYSA-ILA Contract Board, a grievance objecting to the threats of a work stoppage.

62.   Mr. Curto issued in accordance with the NYSA-ILA CBA a notice scheduling for Monday, September 27, 2010, at 10:00 A.M., a meeting of the NYSA-ILA Contract Board, the joint labor-management grievance panel.

63.   On September 27, 2010, the NYSA-ILA Contract Board convened the meeting as scheduled, but the ILA members of the Contract Board who are the presidents of the NY-NJ ILA Locals did not attend.  In accordance with Article V, Section 3(B) of the Contract Board's Bylaws any actions taken by the side in attendance shall be deemed to have been voted against by the absent party, resulting in a deadlock.

64.   At 11:00 A.M. on September 27, 2010, a notice pursuant to Article XXV, Section 6(b) of the NYSA-ILA CBA was e-mailed by the Executive Secretary of the NYSA-ILA Contract Board to Harold J. Daggett, stating that an expedited arbitration hearing would be held at 12:00 noon at NYSA's office in Edison, New Jersey before Arbitrator Eric J. Schmertz to resolve NYSA's grievance.  Notice of the arbitration was provided by telephone to Defendant ILA's counsel.  A

hearing was held at which Arbitrator Schmertz heard testimony and received exhibits from NYSA.

Again, the union members of the Contract Board, who are the presidents of the NY-NJ ILA Locals,

did not appear at the arbitration.

65.     At the conclusion of the hearing, Arbitrator Schmertz issued a short-form award that

states in part:

> There have been reliable reports of imminent picketing at the Port of New York and
> New Jersey by members of ILA locals from outside the Port of New York and New
> Jersey to protest carriers that call at terminals operated in the Port of Philadelphia by
> Holt Terminals.  This picketing would constitute secondary activity in violation of
> the National Labor Relations Act.  Accordingly, the threatened picket lines are not
> bona fide and the members of the ILA have no right to refuse to cross any such
> picket line.  If such picketing commences, I order the officers of the International
> Longshoremen's Association, AFL-CIO and its constituent locals in the Port of New
> York and New Jersey to inform their members that such picket lines are not bona
> fide and their refusal to cross those picket lines is a violation of the no-strike clause
> of the NYSA-ILA Collective Bargaining Agreement.

66.     By facsimile dated September 27, 2010, a copy of Arbitrator Schmertz's Arbitration

Award was served upon the ILA's Executive Vice President and the ILA's General Counsel, who

subsequently advised that that day he sent a copy of the Award to each of the NY-NJ ILA Locals.

67.     On September 28, 2010, pickets appeared early in the morning at the marine terminal

facilities operated by the MTO/Stevedore Plaintiffs.

68.     Upon information and belief, the pickets were established by members of the

Philadelphia ILA Locals.

69.     Members of the NY-NJ ILA Locals who had been working left their respective

terminals and stood behind the picket lines; other members of the NY-NJ ILA Locals refused to

cross the picket lines; and numerous members of the NY-NJ ILA Locals joined the pickets.

70.     Members of the NY-NJ ILA Locals ignored their employers' instructions to return to work, and some union shop stewards joined the picket lines.

71.     Upon information and belief, officers, agents, and representatives of the NY-NJ ILA Locals were present at marine terminal facilities in the NY-NJ Port during the picketing and either encouraged members of the NY-NJ ILA Locals to refuse to cross the picket lines or failed to take action to dissuade them from doing so.

72.     Upon information and belief, picket signs at the marine terminal facilities in the NY-NJ Port contained statements, such as "Holt took our jobs.  We are on strike"; "Holt Starves My Family"; "Holt has taken our jobs from us.  He moved Delmonte from our pier to Gloucester, NJ for $8.00 per hour scabs"; and "Holt starves my family.  He went after Delmonte.  Our jobs are being displaced.  Labor agreed to concessions.  Terminated our Delmonte contract."

73.     Upon information and belief, officers, agents, employees, and representatives of the NY-NJ ILA Locals instructed members of those locals to leave the terminals.

74.     On September 28, 2010, NYSA on behalf of its members filed with this Court a petition to confirm and enforce the arbitration award and to obtain preliminary and permanent injunctive relief.  *See New York Shipping Association, Inc. v. International Longshoremen's Association, AFL-CIO, et al.*, 10-cv-4960 (DRD)(MAS).  At 3:00 P.M. on that day, the Honorable Dickinson R. Debevoise issued an Order to Show Cause and Temporary Restraining Order (Order), which (1) enjoined the ILA, the ILA locals in the NY-NJ Port, and their respective officers, agents, servants, members, employees, representatives, and attorneys who receive notice of the Order from failing to comply with the terms of the Award and from threatening, calling, engaging in, conducting, organizing, taking part in, sanctioning, inducing, ordering, encouraging, or aiding any

work stoppage contrary to the Award and (2) directed the ILA, the ILA locals in the NY-NJ Port, and their respective officers, agents, servants, members, employees, representatives, and attorneys who receive notice of the Order to maintain the working conditions, work assignments, and manning decisions prevailing between the parties on September 27, 2010, and to take all appropriate measures to terminate and prevent any violation of the Award, including the issuance forthwith of notices to the members, officers, servants, attorneys, employees, and agents of the ILA and the ILA locals in the NY-NJ Port to terminate and refrain from honoring the picket lines or otherwise violating the terms of the Award.

75.     On September 28, 2010, copies of the Court's Order were delivered by electronic mail to the ILA, its counsel, counsel to certain of the NY-NJ ILA Locals, including Defendants ILA Local 1, ILA Local 1233, ILA Local 1804-1, and ILA Local 1814; telephonic notification concerning the Order was provided to ILA Local 1233; copies of the Order were sent via facsimile to the ILA and to all the NY-NJ ILA Locals; and copies of the Order were distributed by hand to dozens of individual longshore workers.

76.     Members of the NY-NJ ILA Locals  refused to return to work for the 7:00 P.M. shift on September 28, 2010.

77.     The next morning members of the NY-NJ ILA Locals again refused to return to work. By 10:30 A.M. on September 29, 2010, the ILA and each of the NY-NJ ILA Locals had been served with a hard copy of the Court's Order.  NYSA warned the ILA that contempt proceedings would be commenced that day if the work stoppage was not called off.

78.     By the afternoon of September 29, 2010, the ILA informed NYSA that its members would return to work for the 7:00 P.M. shift.  ILA members without exception did in fact return to work for that shift.

79.     On October 7, 2010, at a meeting of the Industry Resource Committee (IRC), a joint labor-management administrative body under the Master Contract, Management representatives expressed concern about the reoccurrence of picketing in the NY-NJ Port concerning the Philadelphia dispute but were assured by Harold J. Daggett, Defendant ILA's Executive Vice President and the president of Defendant ILA Local 1804-1, that there would be no further work stoppage.  James H. Paylor, Jr., who was also in attendance at this IRC meeting, reiterated the need for the carriers to send a letter to the Governor of Pennsylvania threatening to withdraw from the Port of Philadelphia and requested USMX to agree to an amendment to the Master Contract prohibiting carriers from calling at terminals operated by companies with double-breasted operations, which in the view of Mr. Paylor means the Holt family companies because one company has ILA-represented employees and the other does not.

80.     On November 1, 2010, this Court issued a Consent Order and Judgment in *New York Shipping Association, Inc. v. International Longshoremen's Association, AFL-CIO, et al.*, 10-cv-4960, that *inter alia* confirms and enforces Arbitrator Schmertz's Award and permanently enjoins the ILA and the NY-NJ ILA Locals from failing to comply with Arbitrator Schmertz's Award and from threatening or engaging in any work stoppage contrary to that Award.

## COUNT I

81.     Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1-80 above and incorporate same by reference as if fully set forth herein.

82.    Plaintiffs are engaged in commerce or in an industry affecting commerce.

83.    Section 8(b)(4) of the Labor-Management Relations Act,  29 U.S.C.A. § 158(b)(4)

(West 1998), provides *inter alia* as follows:

It shall be an unfair labor practice for a labor organization or its agents – . . .

(4)    (i)    to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is – . . .

(B)    forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees . . . .

84.    Section 303 of the Labor-Management Relations Act,  29 U.S.C.A. § 187 (West

1998), provides as follows:

(a)    It shall be unlawful for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b)(4) of this title.

(b)    Whoever shall be injured in his business or property by reason of any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

85.    Defendants engaged in or induced or encouraged their members who are employed

by Plaintiffs to engage in a strike or a refusal in the course of their employment to perform any

A0008057                                -26-

services for Plaintiffs or threatened, coerced, or restrained Plaintiffs, where the object of such conduct was to force or require Plaintiffs to cease doing business with Greenwich Terminals LLC or to alter their relationships with Greenwich Terminals LLC or threatened, coerced, or restrained Plaintiffs to force or require Gloucester Terminals LLC to recognize or bargain with the Philadelphia ILA Locals as the representative of the employees at GMT or to force or require Greenwich Terminals LLC to recognize or bargain with the Philadelphia ILA locals as the representative of all its employees.

86.     The acts and conduct of Defendants are unlawful and in violation of 29 U.S.C.A. § 158(b)(4) (West 1998) and, therefore, in violation of 29 U.S.C.A. § 187 (West 1998)

87.     As a result of the acts and conduct of Defendants, Plaintiffs have suffered damages in an aggregate amount exceeding Five Million ($5,000,000) Dollars.

## COUNT II

88.     Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1-80 above and incorporate same by reference as if fully set forth herein.

89.     Defendant ILA and Defendants NY-NJ ILA Locals in bad faith and in willful disobedience of both an arbitration award and a court order induced, encouraged, or directed their members to engage in an unlawful work stoppage in violation of 29 U.S.C.A. § 158(b)(4) (West 1998) and, therefore, in violation of 29 U.S.C.A. § 187 (West 1998).

90.     As a result of that conduct, Plaintiff NYSA has suffered damages in that Plaintiff NYSA incurred attorneys' fees in connection with its efforts to terminate the work stoppage.

A0008057

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment be entered as follows:

(1)     ordering Defendants jointly and severally to pay a money judgment to each

Plaintiff to reimburse each Plaintiff for the damages that it suffered as a result

of Defendants' unlawful activity;

(2)     ordering Defendants jointly and severally to pay to Plaintiff NYSA the

attorneys' fees it incurred in connection with its efforts to terminate the work

stoppage;

(3)     ordering Defendants jointly and severally to pay the reasonable costs of this

action; and

(4)     ordering such other and further relief as the Court may deem just and proper.

**Dated:**  Bayonne, New Jersey
        December 3, 2010

THE LAMBOS FIRM, LLP

By:___ s/ James R. Campbell_____
        Carol N. Lambos
        James R. Campbell
        599 Avenue C
        Bayonne, New Jersey 07002
        Tel. (201) 823-1000
        Fax (201) 823-3097

        and

        Donato Caruso
        William M. Spelman
        THE LAMBOS FIRM, LLP
        303 South Broadway, Suite 410
        Tarrytown, New York 10591
        Tel. (212) 943-2470
        Fax (212) 797-9213

        *Attorneys for Plaintiffs*

A0008057                    -28-