**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------------------------------- X
NEW YORK SHIPPING ASSOCIATION,        :
INC., et al.,                         :
                                      :
                    Plaintiffs,       :        Civ. No. 10-6261 (DRD)
                                      :
         -v-                          :            OPINION
                                      :
INTERNATIONAL LONGSHOREMEN'S          :
ASSOCIATION, AFL-CIO, et al.,         :
                                      :
                    Defendants.       :
-------------------------------------------------------- X
```

*Appearances by:*

THE LAMBOS FIRM, LLP
Carol N. Lambos
James R. Campbell
Ian A. Weinberger
599 Avenue C
Bayonne, New Jersey 07002

Donato Caruso
303 Broadway, Suite 410
Tarrytown, New York 10591

            *Attorneys for Plaintiffs*,

MARRINAN & MAZZOLA MARDON, P.C.
Kevin Marrinan
John P. Sheridan
26 Broadway, 17th Floor
New York, New York 10004

            *Attorneys for Defendants.*

1

**DEBEVOISE, Senior District Judge**

This case arises out of an unlawful work stoppage by union members at Port of New York and New Jersey on September 28 and 29, 2010.  Plaintiff is New York Shipping Association, Inc., the multiemployer collective-bargaining representative for employers of longshoremen in the Port of New York and New Jersey ("Port NY/NJ"), and its individual members:  nineteen ocean-carrier members; six marine-terminal-operator; and a crane-maintenance-repair company (collectively referred to as "NYSA").  Defendants are the International Longshoremen's Association (ILA), five of its NY/NJ locals (ILA Locals 1, 920, 1233, 1235, 1804-1, 1814) and four of its Philadelphia locals (ILA Locals 1242, 1291, 1566, 1588) (collectively referred to as "Original Defendants").  Presently before the Court is a Motion to Dismiss the Complaint for lack of subject matter jurisdiction under Rule 12(b) (1), brought by six of the Original Defendants (ILA, four NY/NJ locals (ILA Locals 1, 920, 1233, 1814), and one Philadelphia local (ILA Local 1566)) (collectively referred to as "Moving Defendants").  For the reasons set forth below, Moving Defendants' Motion is GRANTED.

## I.  BACKGROUND

The parties' history in this action is contentious and relates back to an unlawful secondary boycott held at Port NY/NJ in support of Philadelphia ILA union workers who were losing their jobs to non-union labor.  At issue is whether a series of exchanges between the parties' counselors amounted to an agreement to arbitrate; and whether subject matter jurisdiction is foreclosed pursuant to federal labor law.

**The Philadelphia Dispute**

In August 2010, Del Monte Fresh Produce Co. ("Del Monte") entered into an agreement to relocate its vessel calls beginning in or about October 2010 from an ILA-unionized facility, Packer Avenue Marine Terminal (PAMT), to a non-union facility, Gloucester Marine Terminal (GMT).  Philadelphia ILA locals reacted by organizing a work-stoppage of a Del Monte vessel. In response, Del Monte abruptly relocated that vessel and its future vessel calls to GMT on September 21, 2010.

**Port of NY/NJ Work Stoppage**

On September 24, 2010, rumors began to circulate among terminal operators in Port NY/NJ that the NY/NJ ILA locals would refuse to cross picket lines established by and on behalf of members of the Philadelphia locals to protest the use of PAMT by carrier-members of NYSA. Rumors of the refusal to cross the picket line were confirmed by an exchange between NYSA's President and Harold J. Daggett, who at the time was ILA's Executive Vice President and President of Defendant Local 1804-1.

**Grievance Procedures in Accordance with CBA**

In response, NYSA called an emergency meeting of the Contract Board for September 27, 2010, in accordance with the grievance and dispute-resolution process of the CBA.  The meeting convened as scheduled, but neither the ILA members of the Contract Board, who were the presidents of the NY/NJ locals, nor their counsel appeared at the meeting.  In accordance with Article V, Section 3(B) of the Contract Board's Bylaws, any actions taken by the side in attendance shall be deemed to have been voted against by the absent party, resulting in a deadlock.

After the Contract Board meeting, a notice pursuant to Article XXV, Section 6(b) of the CBA was emailed by the Executive Secretary of the Contract Board to Daggett, stating that an

expedited hearing would be held at 12:00 noon at NYSA's offices before Arbitrator Eric J.

Schmertz to resolve NYSA's grievance.  Notice of the arbitration was provided by telephone to

Defendant ILA's counsel.  Again, neither the union members of the Contract Board nor their

counsel appeared at the arbitration.  At the conclusion of the hearing, Arbitrator Schmertz issued

a short-form award that states in part:

> There have been reliable reports of imminent picketing at the Port
> of New York and New Jersey by members of ILA locals from
> outside the Port of New York and New Jersey to protest carriers
> that call at terminals operated in the Port of Philadelphia by Holt
> Terminals.  This picketing would constitute a secondary activity in
> violation of the National Labor Relations Act.  Accordingly, the
> threatened picket lines are not bona fide and the members of the
> ILA have no right to refuse to cross any such picket line.  If such
> picketing commences, I order the officers of the International
> Longshoremen's Association, AFL-CIO and its constituent locals
> in the Port of New York and New Jersey to inform their members
> that such picket lines are not bona fide and their refusal to cross
> those picket lines is a violation of the no-strike clause of the
> NYSA-ILA Collective Bargaining Agreement.

A copy of Arbitrator Schmertz's Arbitration Award was served upon Daggett and the ILA's

General Counsel.  The ILA's General Counsel subsequently sent a copy of the Award to each of

the NY/NJ locals. Despite the Arbitrator's order, the next day, 3,600 members of the NY/NJ

locals engaged in a work stoppage in NY/NJ Port, alongside members of the Philadelphia locals.

**Prior Proceedings**

On the first day of the work stoppage, NYSA filed with this Court a petition to confirm

and enforce the Arbitration Award and to obtain preliminary and permanent injunctive relief. See

New York Shipping Ass'n v. Int'l Longshoremen's Ass'n, No. 10-cv-4950 (DRD) (MAS)

(D.N.J. filed Sept. 28, 2010).  Notice of the filing was sent to ILA's General Counsel.  No one

from or on behalf of ILA appeared at the courthouse.  On September 28, 2010 at 3:00 p.m., this

Court issued an Order to Show Cause and Temporary Restraining Order enjoining the ILA and the NY/NJ locals and their officers, representatives, and members from failing to comply with the terms of the Arbitration Award and from engaging in, conducting, sanctioning, or encouraging a work stoppage.

Despite the issuance and service of the Court Order, the NY/NJ locals refused to return to work that day for the 7:00 p.m. shift.  The next morning, the NY/NJ locals again refused to return to work.  By 10:30 a.m. on September 29, 2010, the ILA and each of the NY/NJ locals had been served a hard copy of the Order.  NYSA then warned the ILA that contempt proceedings would be commenced that day if the work stoppage was not called off.  That afternoon, the ILA informed NYSA that its members would return to work for the 7:00 p.m. shift.  The work stoppages in the NY/NJ Port and the Port of Philadelphia ended simultaneously, and ILA members in both ports without exception returned to work for that shift.

On November 1, 2010, this Court issued a Consent Order and Judgment confirming and enforcing the Arbitration Award and permanently enjoining the ILA and the NY/NJ locals from failing to comply with the Award and from threatening or engaging in any work stoppage contrary to the Award.  In the Consent Order, the parties agreed that they had an agreement to arbitrate; that the underlying dispute decided by Arbitrator Schmertz was arbitrable under the agreement; and that Arbitrator Schmertz issued an enforceable award.  See New York Shipping Ass'n v. Int'l Longshoremen's Ass'n, No. 10-cv-4950 [Doc. 14].

**The Present Action**

On December 3, 2010, NYSA filed a Complaint against the Original Defendants.  The Complaint alleged that the work stoppage was an illegal secondary boycott in violation of the National Labor Relations Act, and included a demand for damages of five million dollars

($5,000,000) plus attorney fees.  Subsequently, Moving Defendants filed a Letter received by the Court on September 20, 2011, seeking permission to file a motion to dismiss for lack of subject matter jurisdiction because the statutory claims are subject to arbitration. [Doc. 39].  By letter order dated September 23, 2011, the Court granted permission to file the motion.

On September 22, 2011, a telephone conference took place between counsel to Moving Defendants, John Sheridan and Kevin Marinnan, and counsel to NYSA, Donald Caruso of The Lambos Firm.  During the telephone conference, Mr. Caruso floated a proposal to refer the dispute to arbitration on three conditions: 1) arbitration would allow for discovery consistent with the Federal Rules of Civil Procedure; 2) the Confidentiality Agreement and Clawback Agreement would remain in effect; 3) all the locals, including the Philadelphia locals, would agree to be bound to the arbitration.  The following day, Mr. Sheridan sent an email informing all counsel to Original Defendants of the proposal.  [Doc. 59-3].

On September 27, 2011, Mr. Sheridan learned, via Mr. Marinnan, that Mr. Caruso had polled NYSA, and that NYSA authorized Mr. Caruso to make an offer to Original Defendants consistent with the proposal discussed in the September 22, 2011 telephone conference. (Def.'s Reply Br., Sheridan Cert. ¶12).   Mr. Caruso asked Sheridan to poll Original Defendants to see if they would accept. (Id. ¶13).  Mr. Sheridan thus sent a second email to all counsel to Original Defendants communicating the terms of the offer.  [Doc. 59-4].  The next day, all counselors to Original Defendants, but one, participated in a telephone conference and accepted NYSA's offer. (Def.'s Reply Br., Sheridan Cert. ¶14).  By October 7, 2011, the remaining counselor indicated acceptance to Mr. Marinnan. (Id. ¶ 15).  On October 11, 2011, Mr. Marinnan communicated to NYSA that Original Defendants had accepted the offer, including the three conditions. (Id. ¶ 16).

The same day, Mr. Sheridan had a telephone conversation with NYSA counselor James Campbell, also of The Lambos Firm, regarding the parties' agreement to arbitrate, and about who should advise the Court of the agreement.  (Id. ¶ 17).

The agreement to arbitrate was communicated in a Letter by Mr. Sheridan dated October 11, 2011. [Doc. 42].  The Letter informed the Court:

> [A]ll parties in this lawsuit met prior to our filing the motion and agreed that this matter should be referred to arbitration.
>
> In light of this agreement, we write on behalf of all parties in this action to respectfully request that the settlement conference scheduled for Tuesday October 18, 2011, be adjourned, and that the parties not be required to submit the confidential settlement memoranda today.  The parties are preparing a proposed order and stipulation dismissing the lawsuit without prejudice and referring Plaintiffs' claims to arbitration.  The parties intend to submit same to the Court for its approval shortly.

Counsel for all parties were carbon-copied.

The Court thereafter issued an Order on October 17, 2011, dismissing the case "as to all litigants, without costs and without prejudice to the right, upon good cause shown within 60 days, to re-open this action if the settlement has not been consummated." [Doc. 44].

The same day, Original Defendants circulated the draft stipulation and order associated with the arbitration agreement.  Within two days, NYSA circulated edits to the document. Although there was no further written communication about the document, the parties continued to have some oral discussion related to arbitration.  Mr. Campbell telephoned Mr. Sheridan multiple times to check the status of the proposed stipulation and order.  (Pls.' Opp. Br., Campbell Cert. ¶5).  Each time Mr. Sheridan informed Mr. Campbell that Mr. Sheridan had to check with Mr. Marrinan, however Mr. Campbell was not apprised as to what Mr. Marrinan said. (Id.).  Additionally, the parties continued to have ongoing discussions regarding settlement.

(Id.). Defendants only recently sent NYSA's counsel a copy incorporating all of NYSA's proposed changes and indicating Original Defendants' consent. (Def.'s Reply Br., Sheridan Cert., Ex. B).

On December 9, 2011, NYSA filed a letter motion to reopen the case. [Doc. 45]. NYSA informed the Court that a stipulation and order was not yet finalized and signed by the parties, and that settlement discussions had broken down. Thus, NYSA requested the case be re-opened "[i]n light of the parties' inability to reach an agreement on arbitration or to settle the action." The Court granted the motion and restored the action to the active calendar. [Doc. 46]. Moving Defendants now move to dismiss the case for lack of subject matter jurisdiction pursuant to Rule 12(b) (1), arguing that the parties are bound to the October 11, 2011 Letter to the Court memorializing an agreement to arbitrate, and that subject matter jurisdiction is foreclosed pursuant to federal labor law.

## II. DISCUSSION

### A. Standard of Review

A party may move for dismissal pursuant to Rule 12(b) (1) based on lack of subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b) (1), the plaintiff must bear the burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). No presumption of truthfulness is accorded to the plaintiff's allegations. U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 509 (3d Cir. 2007).

When faced with a Rule 12(b)(1) challenge to jurisdiction, the court "must start by determining whether [it is] dealing with a facial or factual attack to jurisdiction. If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most

favorable to the plaintiff." Id.  "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." Id.  Moreover, the trial court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated.  Symczyk, 656 F.3d at 191 n.4 (citing Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). A jurisdictional challenge is a factual challenge if "it concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." U.S. ex rel. Atkinson, 473 F.3d at 514.  Here, Moving Defendants make a factual challenge to jurisdiction, arguing that there is no subject matter jurisdiction because NYSA has already agreed to arbitration, and because NYSA is contractually bound by the CBA to arbitrate their claims.

### B.   Agreement to Arbitrate

Moving Defendants argue that the October 11, 2011 Letter to the Court represents a memorialization of an agreement to arbitrate and is binding on all parties. (Defs.' Reply Br. 17). The Letter sent to Judge Shipp upon agreement of counsel to the parties, and carbon-copied to counsel for all parties, clearly indicates that "[a]ll parties in this lawsuit met . . . and agreed that this matter should be referred to arbitration." [Doc. 42].  In light of that agreement, the Court issued an Order on October 17, 2011 dismissing the case as to all litigants, and permitting for it to be re-opened if settlement were not consummated within 60 days. [Doc. 44].

NYSA argues that the parties never reached a binding agreement to arbitrate because the parties never finalized an agreement to submit the claims to arbitration.  (Pls.' Reply Br. 11). Specifically, NYSA contends that "[u]pon receipt of Plaintiffs' offer to arbitrate, Moving Defendants failed to respond to Plaintiffs' offer to arbitrate; as a result, Plaintiffs withdrew its offer to arbitrate on December 9, 2011 by filing their motion to re-open the action.  Any

9

purported acceptance after that date by Moving Defendants is rendered moot by Plaintiffs'

withdrawal." (Pls.' Reply Br. 12-13).  NYSA offers three reasons why there was no unequivocal

acceptance of the offer:  1) the lack of agreement to arbitrate by Original Defendants in the

Complaint; 2) the Moving Defendants' failure to sign the stipulation and order related to the

October 11, 2011 Letter to the Court; 3) the failure to set specific dates for the end of discovery

and for arbitration to begin.

The Court is not persuaded by NYSA's contentions.  Both the underlying October 11,

2011 Letter submitted by Sheridan with agreement of the parties and upon which the Court

Order relied, and the October 14, 2011 Order dismissing the matter, clearly refer to "Counsel for

All Parties," "all parties," and "all litigants" in the action.  [See Docs. 42, 43].  Moreover, two

electronic communications are on the record in which Mr. Sheridan informs Counsel for Original

Defendants of Mr. Caruso's proposal and Mr. Caruso's poll of NYSA to arbitrate.  (See Def.'s

Reply Br., Sheridan Cert., Exs. B, C).  Although not dispositive, it is noteworthy that no locals

have been excluded or non-participant in furtherance of arbitration, as is indicated by the most

recent stipulation on the record, which includes affirming signatures by counsel for all eleven

Original Defendants. [Doc. 59-8].  The failure to secure specific dates regarding an end to

discovery and/or for arbitration to begin are not dispositive of the fact that a proposal was

floated, and the offer was authorized, extended, and accepted.  No further inquiry is necessary to

find that a binding agreement was reached between the parties in order to dismiss the litigation

and refer it to arbitration.

## C.  Federal Labor Law and Arbitrability of Statutory Claims

The parties disagree as to whether federal labor law mandates arbitrability of statutory claims based on the nature of the arbitration clause of the NYSA-ILA CBA.  Moving Defendants argue that dismissal is proper in light of case law interpreting broad arbitration agreements vis-à-vis Section 303 of the Labor Management Relations Act (LMRA), 29 U.S.C.A. §187, and the general trend in favor of arbitration under the Fair Arbitration Act (FAA), 9 U.S.C.A. §158(b)(4).  In turn, NYSA distinguishes prior case law based on facts and the breadth of the arbitration clauses therein, and counter-argues that longshoremen should be read within the Section 1 exclusion to the FAA.  Notably, NYSA reminds the Court that the Philadelphia locals are not subject to the grievance and arbitration provisions of the CBA, and argues in favor of subject matter jurisdiction to avoid dual actions – one before the Arbitrator subject to the contract between NYSA and the NY/NJ locals, and a federal-court action against the Philadelphia ILA locals.  Finally, NYSA maintains that federal labor policy would not be furthered by referring the matter to arbitration, taking into consideration the ILA's disregard of both Arbitrator Schmertz's determination and this Court's Order.

When determining the arbitrability of a statutory claim, a court must look at the following:

(1) Did the parties agree to arbitrate?
(2) What is the scope of any such agreement?
(3) If federal statutory claims are asserted, did Congress intend them to be non-arbitrable by precluding a waiver of a judicial forum?

Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union, et al., 956 F. Supp. 1190, 1199 (D.N.J. 1996) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991), and Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).

11

The relevant analysis here is very simple.  By its own terms, the CBA is "between New York Shipping Association, Inc. (for and on behalf of its members) and the International Longshoremen's Association, AFL-CIO (for and on behalf of its affiliated locals) . . . for the Port of New York and New Jersey."  The cardinal principle dates back to a series of cases known as the <u>Steelworkers Trilogy</u>: "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  <u>Steelworkers v. American Mfg., Co.</u>, 363 U.S. 564, 570-571 (Brennan, J., concurring); <u>Steelworkers v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960); <u>Steelworkers v. Enterprise Wheel & Car Corp.</u>, 363 U.S. 593 (1960).  See also <u>AT&T Technologies, Inc. v. Communications Workers of America et al.</u>, 475 U.S. 463 (1986).

The Scope of the CBA is defined in Article XXV (Grievance and Arbitration), Section 1:

> Any grievance, dispute, complaint, or claim arising out of or relating to this Agreement shall be handled and disposed of in the manner hereinafter provided in this Article, and all the parties hereto shall be bound by any decisions made in accordance therewith.  A grievance under this Agreement must be brought within one hundred eighty (180) days of the date the grievance first arises.

However broad the scope may be here, the CBA still only binds NYSA and the NY/NJ locals, and not the Philadelphia locals.  Nonetheless, it is clear that all the parties here intended to arbitrate and that the scope of that agreement made and memorialized on October 11, 2011 in the Letter to the Court, is broad.  Therefore, in order for a statutory claim to override the strong federal policy favoring arbitration, the party opposing arbitration must show that Congress reserved the federal forum to vindicate rights under the statute.  See <u>Farmland Dairies</u>, 956 F.Supp. at 1199 (quoting <u>Mitsubishi Motors Corp. V. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 628 (1985) ("Having made the bargain to arbitrate, the party should be held to it unless

Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.")).

Section 8(b)(4) of the LMRA prohibits, among other things, a union or its agents from "engaging in, or . . . inducing or encouraging any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or refusal . . . to perform any services." 29 U.S.C. § 158.  Section 303 of the LMRA establishes jurisdiction of the district courts over suits for damages suffered because of violations of § 8(b) (4).  The Court is in accord with Judge Walls' finding in Farmland Dairies that "while § 303 seeks to provide a judicial remedy for violations of § 8(b) (4), there is no indication that the remedy was meant to be exclusive if the parties have agreed otherwise.  Therefore, the Court cannot hold that Congress exhibited an intent to make § 303 claims non-arbitrable." 956 F. Supp. at 1202.  Here, the parties clearly made an oral and written agreement to arbitrate, as was memorialized by the October 11, 2011 Letter to the Court.  Any delay in finalizing details related to the stipulation and order and securing signatures of all the parties does not negate the fact that a proposal was floated, an offer was authorized and extended, and that acceptance of the terms was achieved.

### III. CONCLUSION

For the foregoing reasons, Moving Defendants' Motion for Dismissal is GRANTED. The Court will enter an order implementing this opinion.

_/s/Dickinson R. Debevoise _____
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  March _13__, 2012

13